Okay, the first case on the call today is 5-13-109, Lake Environmental, Inc. v. Arnold, et al. Ready to proceed? Good morning. David Agnoli representing the Helen Lake Environmental, Inc. Your Honors, this case presents the question of whether the Illinois Department of Public Health acted unreasonably when it resurrected a claim for alleged violations of the Asbestos Abatement Control Act after dismissing those claims with prejudice two years earlier, and then persisting in the filing of this resurrected claim in a third case alleging the very same violation after the second case was dismissed with prejudice. If the answer to either of these questions is yes, the Department acted unreasonably in either filing or pursuing this multiple litigation, then the trial court should have imposed sanctions under Supreme Court Rule 137 or, at a minimum, explain why, in a reasoned analysis, Rule 137 should not be applied to prevent multiple vexatious litigation arising out of the same set of operative facts. Let me turn, initially, to the standard which Rule 137 sets. It's an objective standard of reasonableness. The court should not look at this case from the standpoint of what the Department of Public Health subjectively believed it was doing, but rather whether it was reasonable under the facts and the law, both of which are undisputed and settled in this case, whether it was reasonable for the Department to take the legal position that it did. One of the cases cited in our brief, it's the Pilot v. Pilot Brothers case, cited at page 13 of our brief, is very instructive on this point because the facts of the case compare closely to those of the case at bar. The Pilot Brothers case also infall sanctions under Rule 137 for the filing of successive lit lawsuits. And the court held in that case that sanctions should be imposed where the court finds that a party has instituted a suit which that party knew or should have known would be barred by race judicata. I emphasize should have known because that's the objective standard which the court should follow in deciding whether Rule 137 applies in this case. If we look at the elements of race judicata in the instant case, we see that all of them were met with the Department's initial proceeding against Lake Environmental. It's clear that the first, the initial proceeding involved the same parties. The Department on one hand and Lake Environmental on the other. It's equally clear that the basis of the first claim was the same as the basis of the two subsequent proceedings. They all involved the very same job performed at Scott Air Force Base in the spring of the year 2008. All three cases allege the very same violations of the Asbestos Abatement Control Act. And all of the alleged violations in the two subsequent cases occurred and were known by the Department during the course of the first administrative proceeding. So we have the same parties and the same claims. The final element of race judicata is whether there was a judgment on the merits in the initial action. Do the circuit court have a final order or not? In this case? Yes. Yes, Your Honor. It's final. No, the first case. Are you talking about the first case? I'm referring to the first case now. The first administrative proceeding. But there is also a jurisdictional question that's been raised by the Department and I can address it now or later. Would you prefer now? Yes. The jurisdictional point raised by the Department is this. When the circuit court in the third and final case, the one that I have filed this appeal in, entered judgment in favor of Lake Environmental, the judgment reversed the administrative agency's action and remanded for further proceedings consistent with the circuit court's judgment. The Department claims that that order is not final for purposes of appeal because there was a remand. The Department's argument, however, overlooks the fact that the Department had no discretion to alter the outcome of the license revocation on remand. This jurisdictional question, when a case is remanded to an administrative agency in a proceeding under the administrative review law, the question of finality turns on whether the agency has any discretion on remand. If the conclusion of the case on remand is foreordained by the circuit court's judgment and reasoning, then the case is treated as final for purposes of appeal. And there are two interesting cases on that point cited in our reply brief. The first is the Fisher v. Rock Island County case cited at page two of our reply. In that case, the circuit court, in rendering judgment in the administrative review case, remanded to the agency with directions to reverse an ineligibility finding regarding an employee and grant that employee an interview. And if he passes the interview, then put him on the eligibility list. So the question arose when the agency appealed that order whether it was final. And the court said, yes, it was final, notwithstanding the fact that this man's eligibility had to be determined on remand because the circuit court's judgment told the agency exactly how to accomplish that on remand. There was nothing left in terms of exercise of discretion at the administrative level following remand. We have the same facts here. The circuit court made it abundantly clear that the department had no basis to revoke our client's license on the facts that were presented in the license revocation case. The department has never alleged that any other facts existed or violations existed which would authorize license revocation. So there was nothing for the agency to do on remand except issue the license. But more important, Your Honors, even if the judgment were not initially final when the circuit court reversed and remanded, prior to the ultimate decision denying the contractor's motion for sanctions, the record shows that the department did in fact reissue the license. And when they reissued the license, they did so without any qualification or condition. The department in no way indicated that this reissuance of the license was going to be provisional or temporary or dependent on some further administrative proceedings. And in fact, no additional administrative proceedings have followed. So in terms of jurisdiction, the order was final when entered because there was no discretion on remand. But even if the court thought there were some finality problem, it's resolved by the fact that the license was reissued on remand. Turning back to the final element of res judicata, that's the element of whether there was a final judgment on the merits in the initial administrative proceeding case. And we need only look at the form of the order in the first case. It said this case is dismissed with prejudice. With prejudice has a definite and distinct legal meaning. It means it's all over, folks. End of show. It seems to me that the department had no reason to believe when the initial case was dismissed with prejudice that it had preserved its right to dredge up these same violations in some subsequent proceeding. By the same token, it was perfectly reasonable for the contractor to expect that this case was over in 2008 with the dismissal with prejudice. And the department would not choose or attempt to resurrect these alleged violations. So how does the department attempt to justify its successive prosecution of these violations beginning two years later? How does the department attempt to square this with the doctrine of res judicata? Well, they don't argue that the elements of res judicata were not present. Instead, the argument, at least on appeal, is that the court, we had the right to rely on equitable exceptions to the doctrine of res judicata. And the department cited three of those exceptions. I'll try to run through them quickly. The first one is, well, the dismissal with prejudice language in that first administrative order was a mistake. We only had to emphasize that the initial proceeding was concluded. Well, the first thing that occurs to me about this argument, Your Honors, is that it was never even made in the circuit court. This appears to be an after-the-fact attempt by the department to justify a legal position in the trial court, a legal position that it never even argued in the trial court. But more importantly, it is undisputed that the department knew of all of the alleged violations when it dismissed the earlier, the first proceeding with prejudice. There's nothing in the record to suggest that the department was somehow operating under a mistake or used or put a typographical error in that first administrative order. There's nothing in the order or in the record that indicates that when the department dismissed with prejudice the first administrative proceeding, it intended to reserve the right at some later date to dredge up these violations. The second so-called equitable exception relied on by the department is almost a corollary of the first one. The department says, well, the first case was dismissed with prejudice because the point was moot. We had filed a stop order against Lake Environmental. Lake Environmental abated all of the alleged violations, so the case was moot. That's why we dismissed it with prejudice. Well, that doesn't explain two things. Actually, three things. First of all, it doesn't explain why they didn't make that argument in the trial court if it was, in fact, the basis for pursuing these multiple lawsuits. Secondly, it is irreconcilably inconsistent with the position that was taken in the two subsequent cases. Now, Lake Environmental never conceded that it even violated the act in the first administrative case, but the department dismissed the charges with prejudice. Then, two years later, says these violations by Lake Environmental are so serious, so severe, that they justify not only civil penalties, but also yanking this contractor's license to apply its profession. Now, how could those violations have been moot in 2008 when they were so serious that in 2010 the department said, we need to punish this contractor, we need to revoke its license. The department cannot eat its cake and have it too. It can't say, on one hand, the case is moot in 2008, and on the other hand, these violations are burning with public endangerment in 2010. So the mootness argument doesn't work. The third and final argument is that the department claims, well, we didn't have jurisdictions in the first case to yank the license, and so we had to bring this in a subsequent proceeding. Well, that's simply not consistent with the Asbestos Abatement Control Act. It provides that at any time, whenever the department sees a violation of the act, it has the option or opportunity to proceed with an administrative case to revoke the contractor's license. In addition, and this is what makes the department's argument particularly disingenuous, you look at the timing here. The dismissal with prejudice occurred in September of 2008. The contractor's license comes up for renewal annually. The next renewal was May of 2010 or 2009. The department renewed his license. Then, two years later, the department says, oh, well, wait a minute, we're going to resurrect the charges that we filed against you relating to this 2008 asbestos job. No. The department had the right to either A, attempt to revoke the license at the time of the initial violation, or B, refuse to renew the license. They can't say that we didn't have authority to proceed in the first case. If they chose not to pursue license revocation in the first case, that was voluntary on their part. The department can't rely on some self-imposed limitation to say that it didn't have jurisdiction in the first case. This is a textbook example of a situation that race judicata is designed to prevent. It's designed to prevent a litigant from having to face the same charges over and over again. I might add that if it was, you know, even if we assume for the sake of argument that it was reasonable for the department to file a second case, whatever reason it had to continue this proceeding vanished when the second case was dismissed with prejudice. Now recall, procedurally, the department filed two subsequent lawsuits. One to revoke the license, two to impose civil penalties. During the course of the license revocation case, the circuit court entered a judgment dismissing the civil penalties case with prejudice. The department did not appeal that judgment. The dismissal with prejudice was based on the very same arguments that the contractor presented in the third case, race judicata and federal preemption. So now we have the first case dismissed with prejudice, and the second case in which the contractor relies on race judicata is dismissed with prejudice. That ruling was collateral estoppel on all issues of law and fact relating to the defense of race judicata. So even if it weren't clear that the doctrine did not bar the department from multiple actions after the first case, it certainly became clear, in fact conclusive, that the department was barred from pursuing the third case. And recall that Rule 137 not only imposes a duty on litigants to refrain from filing frivolous litigation, may I conclude, it also imposes a duty on a litigant to drop a lawsuit once it becomes clear that it is lacking in merit. Go ahead. Thank you.  Thank you. Your Honor, speaking of the department. You might want to speak up so we can record. With respect to the jurisdictional question that's raised, I think that's pretty well addressed in the briefs, and I've called it to the court's attention because I do think that the circuit court's order on the merits does require this court to take a look at it and determine if it will be construed as a final order. On its face, it contemplates a substantive ruling, and then when you go back and read the entire opinion, it doesn't seem that there's, excuse me, a substantive hearing. When you go back and look at the entire opinion, you could ask, well, what could there be a substantive hearing about? So it's just the case that the order does require some construction, and the court needs to take a look at that and determine if it will be treated as a final order. With respect to the merits of the case here, and while we're here, the issue before the court is whether the circuit court abused its discretion in denying Blake's motion for sentence. And, of course, that's a very deferential standard. It would mean that no reasonable judge could rule the way that it did. It's a rule that targets frivolous litigation, not unsuccessful litigation. The standard is simply whether a party had some objectively reasonable arguments. They can be wrong, they can lose, they can be unpersuasive, they can misapply the law. That, in itself, doesn't trigger sanctions. And we've talked mostly here today in the argument about Blake's argument that it was so clear that this subsequent licensure application was barred by race judicata, that any argument to the contrary was frivolous, and that the court abused its discretion by finding otherwise, and that's not the case. I think that there are reasonable questions about the application of race judicata, and that comes through in two main areas. The first is the idea that there was some type of adjudication on the merits back in the 2008 emergency stop work order proceeding. Because for us even to get into technically the idea that race judicata could apply, technically that the elements are met, the whole argument hinges on the idea that there was some type of final adjudication on the merits. And they say, well, there's a final adjudication on the merits because the director's order includes the words with prejudice. And yes, it does include those words. And yes, there is a law that says with prejudice that's generally an adjudication on the merits. But it's also true that orders are reasonably construed with respect to the substance and not the form. And so I think it's very debatable that in fact what we do have here is an adjudication on the merits. And again, if you can debate the premise, if you can say something reasonable in response, then that's not proper for sanction. So let's look at what happened in 2008. If we go back to 2008, this was an administrative proceeding only on an emergency stop work order. They got a stop work order. That's basically a red ticket slapped on the building, no more work can happen. And then they got a notice of the emergency stop work order. It says you can have it here. The only issue there is whether there's a condition that exists that endangers the public health. The only issue you care about in the stop work order is is there a reason for this stop work order? You know, is there an unacceptable concentration of asbestos in the air? When Lake got the stop work order, after they got the stop work order, another contractor comes in and takes corrective action, remediates the situation with the asbestos. So the conditions that are causing the emergency are fixed. So now there's no emergency. There's no need for a stop work order. And the building is approved for demolition. And at that point, the department moves to voluntarily dismiss the stop work order proceeding because it's moot, because there's no reason for a stop work order. And the director grants the motion to dismiss the stop work order proceeding. The director's order says stop work order action is moot. The notice of the stop work order is withdrawn. And the action is dismissed with prejudice. And when you look at the context of that order, the intent is plainly to make clear that the stop work order action is dismissed with prejudice, not to insulate the contractor from any further consequences for performing substandard work. There was not an adjudication on the merits, despite using the word with prejudice, because the merits of no merits of anything were ever decided. There was not an adjudication of anything. Excuse me. What happens if they do nothing with respect to the stop work order? I mean, is there an affirmative action that needs to be taken? Well, if they did nothing with respect to the stop work order, the stop work order would continue in effect. With respect only to that project? Yes. The project is you cannot continue. The stop work order says you cannot continue with this project because there is an emergency condition going on now. Okay. So once they stopped the stop work order, they were free and did continue with the rest of their project abatement? They didn't continue with anything. Another contractor comes in and remediated the emergency conditions. They didn't work at all anymore? On that project, no. Okay. So what was the purpose then of stopping the stop work order? The purpose of stopping the stop work order? Yes. Dismissing it. The purpose of dismissing the stop work order was because another contractor had come in and remediated the emergency conditions. Now there is no longer an unacceptable quality of asbestos in the air because the condition has been remediated. There is not a situation endangering the public that requires immediate attention. So the stop work order is moot. There is no need for a stop work order. That was the nature of the stop work order proceeding. It really wasn't getting into underlying violations of the stop work order. Is the stop work order against the corporation, the environmental that's doing this, or is it against the job? You can't work on the job? Nobody can work on the job when the stop work order is in place, or only this contractor can work on the job, which is it? Well, that contractor can't work on it because part of the stop work order is that work is stopped, and the contractor at that point under the regulations is also taken off the list until that emergency situation is fixed. So you have the stop work order.  The contractor is stopped from working on that job under the – well, the contractor is delisted under the regulations, but I think what's important here is the contractor is stopped from working on that job. So you have a situation where there's this emergency that needs immediate attention. Another contractor here came in and remediated those conditions. Then what is the purpose of dismissing the stop work order? That's what I'm trying to figure out.  Because the stop work order only deals with – is there a standard for a stop work order? Is there a condition that is causing a substantial danger to the public health? A condition right now that's causing a substantial danger to the public health. But this is only directed towards the contractor, correct? And to that job. And to that job. To that job. So when that job was fixed, when that particular job was fixed, when those conditions causing an emergency were remediated, with respect to that contractor, but it was remediated by somebody else, I still don't understand then the reason for dismissing the stop work order against that contractor. Because the stop work order is tied to the job, and the contractor is doing that job. It's looking at whether on that job, in that building, there is a condition that is posing a danger to the public health. So it's not just tied to the contractor. It's not a general pronouncement against the contractor. It's really tied to that job. The contractor is also delisted while the stop work order is in effect, but the stop work order is looking very much at here's a specific job. Here's a dangerous condition on that job. Work cannot continue until that situation is fixed. So under the supervision of the department, some other asbestos contractor comes in and fixes the situation. When the situation is fixed, there is no need for a stop work order because there is no condition that is endangering the public health. That's what the stop work order proceeding is about. That's the only issue in a stop work order proceeding. Here, nothing was adjudicated. We didn't even adjudicate, is there a need for a stop work order? Is there a situation that's endangering the public health right now? We didn't even get there because another contractor came in and the work was remediated. So nothing was adjudicated. But if this type of stop work hearing had gone forward, I mean, the issues are simply, is there an unacceptable level of asbestos in the air? You're only looking at that point as to whether some type of emergency situation exists. The underlying violations of the act are not even directly relevant at that point. The stop work proceeding is very much geared towards under the regulations. Is there an emergency? So I think there's an open question here whether there was ever some type of adjudication on the merits. But all that happened in that hearing was a determination that the stop work order is moved. We can clear this building for demolition. So I guess then everything hinges on what the stop work order says. The stop work order is a ticket that's left on the building, the stop work order. So nobody can work on the building, not even another contractor? Pardon me? Okay. Stopping work on the building. Right. So then how can another contractor go in there and work on the building if it says you cannot work on this building? Because I don't know what it says. You're not telling me. Well, it is in the record, and it does say work on the building is halted. But, of course, to go forward, that doesn't mean now the building will sit in this condition forever. Another contractor under the department's supervision is allowed to come in and fix those emergency conditions. But the stop work order is geared towards whether an emergency exists at that time on that project that is endangering public health. Once those conditions are fixed, are remediated, then there is no need for a stop work order because the conditions are fixed. That's what the stop work order is about. But you can't fix the stop work order without going in the building, which it says you can't do. That's correct. So how do you do that? Well, perhaps. Do you have a hearing? If you had a hearing on the stop work order, it would only be about whether an emergency condition exists. Okay, stop right there. Okay. Now, the second contractor, he comes up to the building. There's a sign that says stop work order. He's not going to go in there. He can't. How does he go in there? What does he do? Does he file something, some application to get that sign torn down so he can go in and work on the building? Despite the stop work order, the department has the authority to allow another contractor to come in under supervision to remediate those conditions. That only makes sense because the stop work order is because there's some condition of asbestos that's endangering the public. You can't just leave it there. So the point of the stop work order is work stops for that moment. We figure out what's going on. We figure out how to remediate this emergency. Another contractor comes in and takes care of the remedial conditions. And yes, it's called stop work order, but that's a phraseology. The stop work order says contractor A cannot do anything. Or does it say no one can do anything? The stop work order says the stop work order is in place. A consequence of the stop work order under the regulations is contractor A is delisted. So that contractor can't go in. He's listed on the order? He is delisted from working on projects until this emergency is fixed. So he can't go in and fix it. But another contractor can go in and fix it. Even though it's called a stop work order, it means let's stop work, assess the emergency situation, and get it fixed. And that's what a stop work order is about. We'll look at it. And again, the situation there is looking at whether there's some type of situation that poses a danger. You wouldn't be proving underlying violations of the regulations or something like that in a stop work order. You'd be looking at is there still a condition here that endangers the public? You'd be looking at things like is there too much asbestos in the air? We'd be looking at things like we took some air samples and it showed too high a concentration of asbestos. But again, we didn't even get there because nothing was adjudicated. Someone came in and did this remedial work. So there was no need to adjudicate anything. That's the first part of this argument is race judicata doesn't apply here because it's very reasonable not to construe the director's final order as a decision on the merits. Even if race judicata tactically applies, the circuit court has the authority to relax race judicata principles. It's an equitable doctrine, and the circuit court has the authority to relax those principles essentially whenever the court is persuaded that the policies that underlie race judicata, this idea of not having successive actions, whenever those policies are outweighed by other considerations. And there were reasonable other considerations here. Again, I think when you look at the director's final order, despite including the words with prejudice, the context makes clear that it's saying the stop work order is moot. There's no need for the work to remain stopped. The building can now be cleared for demolition. And race judicata is also inapplicable because, as I'm trying to explain, that the stop work order proceeding is very different from a license revocation. The stop work order is focused on is there something immediate here that's threatening the public. It's not directly concerned with how that happened or the underlying violations. The license revocation is a very different proceeding. So the court could reasonably have found that you cannot bring these license revocation issues in the stop work proceeding. So in the first lawsuit in 2008, there's nothing about license revocation. They're not trying to revoke any license. They're not trying to revoke anyone's license. It's not even in there. It would not be. They list the violations, but they're not revoking someone's license because of that. And those types of issues would not be appropriate for hearing in a stop work order because the stop work order is only looking at one thing. It's looking at is there a substantial danger here to the public. I mean, they put in the notice of violations because they had reason to think there was some violations. But when you look at the stop work proceeding, it is about whether this emergency condition exists. An emergency condition can exist whether or not there are violations. I mean, someone could accidentally drop a bag of asbestos. The stop work order proceeding is, is there a situation here that is endangering the public? That's what is the only thing that is at issue there. And when that condition is remediated, there's no more need for the stop work order. Could a license revocation have been brought up in the first suit in 2008? And you say it could have maybe, but it wasn't. It could not have been brought in the stop work order proceeding, which was all that was at issue in 2008. Because license revocation is not an issue for a stop work proceeding. It's simply the question of whether there is an emergency condition that requires immediate attention that's posing a danger to the public. So when the stop work order was initiated, I think you used the term that they were delisted from working not only that job, is that every job with respect to the government? I believe it is that they are delisted from every job at that point. Okay. But the regulation is clear about that, about the scope. So when then you dismiss the stop work order, are they automatically then undelisted? Yes. Or was there some other formative action that needs to be taken? Yes, under the regulation they are. Under the regulation, when there is no emergency situation anymore, they are undelisted. Okay. And the stop work proceeding is over because there's no more emergency. Now, at that point, if another type of action is appropriate, such as a license revocation or so on, that would follow. But it is not part of the stop work proceeding in itself, which is simply geared toward the immediate existence of a public emergency, and that's it. It's looking at, is there a dangerous level of asbestos in that particular building on that particular job right now? And that's all that's at issue in that proceeding. Now, could they have brought another proceeding? Could they have brought it earlier? The circuit court thought they could have brought it earlier. Maybe they could have. But a license revocation proceeding is something very different. It would not be part of that proceeding. And it's also, I think, important to keep in mind that a license revocation proceeding takes into a lot of factors. If you're going to bring a license revocation, you would want to do things like investigate the situation, talk to witnesses, look and see if there were complaints at other jobs. There's a lot that goes into a license revocation. None of that has anything to do with the emergency stop work order. So they're very different proceedings. So it would have been reasonable for the court to find, you know, you really could have brought that license revocation as part of the stop work proceeding. And if I may, a final example. We have the briefs. Thank you. Rebuttal. I think you made a very interesting point regarding the scope of this initial stop work order proceeding. In addition to stopping my client from pursuing the job at that point, the stop work order also debarred him as a contractor. In other words, it lifted his license with this? Correct. Attempting to lift his license with this 2008 case. Correct. And then when the case was ultimately dismissed with prejudice six months later, the order, which is in the record, states that respondent is returned to the list of approved contractors. This order that counsel suggests was moved, or just a formality, actually had the effect of reinstating my client's license as an investors abatement contractor. Now, it was an attempt to take the license at the hearing, or had they done that without a hearing? They did it without a hearing. Now, it's certainly true, as counsel for the department suggests, that there was no full-blown administrative proceeding and that the department never attempted to make a permanent license revocation at the time of this initial stop work order proceeding. But the fact that they didn't attempt to do so doesn't mean that they couldn't have done so. That's the whole point of the doctrine of res judicata. If you have a right to bring the action, you can't withhold it. That's called claim splitting. So what the department apparently did, I don't know what they consciously did back at that time, but they certainly had the right not only to shut the job down, but also and temporarily take away my client's license. They also had a right to try and revoke it permanently. But they didn't assert that right. That was their limitation on their own jurisdiction. It wasn't the statute's limitation on their jurisdiction. It's just like a plaintiff in a personal injury case who decides that he's going to bring a property damage lawsuit and doesn't include the bodily injury. And then a year later, after the property damage suit is settled, he tries to bring a personal injury lawsuit. Can't do it. Claim splitting. The fact that the plaintiff chose voluntarily not to assert all the claims that he could have during the first proceeding does not justify him from justifying multiple successive proceedings. Furthermore, when we talk about these so-called equitable considerations or exceptions that the department apparently is relying on, the department does not explain how those equitable exceptions could have possibly persisted after the circuit court dismissed with prejudice the second lawsuit. That clearly eliminated conclusively any possible effort to rely on equitable exceptions. Nonetheless, the department continues with this license revocation case for another year. The department had a clear duty under Rule 137 to drop this matter when the circuit court issued a final judgment dismissing the second lawsuit on the merits and the department chose not to appeal. Counsel is correct when she says that the standard of review is abuse of discretion. That standard, however, is modified to a certain extent if the trial court in denying sanctions fails to give reason. We have cited in our brief six cases in which two districts of the appellate court have held in spades that you cannot deny or grant sanctions in the trial court without giving a reasoned explanation for the decision. In this case, and I don't want to fall into the circuit court, the circuit court is busy. They've got a lot of cases on the docket, but the order in this case says one sentence, sanctions denied. It's not possible to review that order properly. Thank you very much for your time and interest, Your Honor.